UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANATOLY PETUKHOV,
an individual,

       Plaintiff,

vs.

Case No. 1:24 cv 22044

KORANGY PUBLISHING INC.,
a New York corporation,

       Defendant.
_____/

## COMPLAINT

Plaintiff, ANATOLY PETUKHOV, an individual ("**Mr. Petukhov**"), sues Defendant, KORANGY PUBLISHING INC., a New York corporation ("**Korangy**"), and alleges:

### Jurisdiction, Parties, and Venue

1. This is a civil action where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states, over which action this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

2. Mr. Petukhov is an individual who resides in Miami-Dade County, Florida and is otherwise *sui juris*.

3. Korangy is a New York corporation whose principal place of business is in New York, New York.

4. Korangy is subject to this Court's personal jurisdiction because it engages in substantial activity in Florida. Specifically, Korangy publishes "The Real Deal," a print and online publication focused on commercial and residential real estate transactions in New York City, South Florida, and Los Angeles. Korangy markets and sells print subscriptions of the "Real Deal" to Florida subscribers; and markets and sells print and online advertising space to Florida advertisers.

5. Venue is proper in the Southern District of Florida pursuant to 15 U.S.C. § 1391(b) because Korangy is subject to the Court's personal jurisdiction with respect to this action within said district.

**General Allegations**

A. **Mr. Petukhov's Good Name and Reputation**

6. Beginning as a cadet in October 1979, Mr. Petukhov served as a police officer in Russia (then the USSR), rising through the ranks to become the Deputy Head of the Russian Ministry of Internal Affairs' (the "**MVD**") Main Directorate for Combating Organized Crime (the "**GUBOP**") in 1998, which position Mr. Petukhov held until his retirement from the police in April 2001.

7. Mr. Petukhov's work in the GUBOP, which began in 1993, included the investigation of international organized crime organizations and corrupt officials in Russia. For this dangerous work, Mr. Petukhov received numerous commendations from the leadership of the MVD.

8. During his tenure with the GUBOP, Mr. Petukhov provided substantial assistance to U.S. law enforcement in the investigation and prosecution of organized crime members within the United States. In recognition of that assistance, Mr. Petukhov has been given awards by the U.S. Federal Bureau of Investigations ("**FBI**"); Ventura County, California District Attorney, Michael D. Bradbury; and Los Angeles County, California Sheriff, Lee Baca.

9. In or around 1999, the FBI invited Mr. Petukhov to attend a major international law enforcement conference in Honolulu, Hawaii on organized crime in Pacific Rim countries. Mr. Petukhov was the first high-level Russian police official to be invited to address that conference, and his topic was Russian organized crime – a first for the conference.

10. After his retirement from the GUBOP in April 2001, Mr. Petukhov enrolled in a doctoral program at the All-Russian Research Institute in Moscow, from which he earned the degree of Doctor of Judicial Science in or around April 2005.

11. In or around July 2005, Mr. Petukhov was hired by UTD Yasenevo ("**Yasenevo**"), which then owned a chain of department stores in Russia, as the company's Deputy Director General. During his employment by Yasenevo, Mr. Petukhov served on the company's Board of Directors and ultimately acquired a twenty-five percent (25%) ownership interest in the company.

12. In or around 2011, Mr. Petukhov and his family immigrated to the United States and settled in Miami Beach, Florida.

13. Since moving to the U.S., Mr. Petukhov has managed ASKO Inc. ("**ASKO**"), a successful real estate investment and development company.

14. As a result of his career of selfless work and lifetime of upright conduct, Mr. Petukhov has had a good name and reputation, and has enjoyed the esteem and good opinion of his neighbors and others who have known him.

B.   **The Lawsuits in Russia and Florida**

15. In or around 2012, Mr. Petukhov, Sergey Kisilev ("**Kisilev**") (who was then one of Yasenevo's four principal shareholders), and 130 other Yasenevo shareholders initiated legal proceedings in the Arbitration Court of Moscow (the "**Russian Court**") against Pavel Gornostaev ("**Gornostaev**"), then a deputy director of Yasenevo, to invalidate a transaction orchestrated by Gornostaev that diluted the plaintiffs' interest in Yasenevo – and, in particular, diluted Mr. Petukhov's interest from 24.79% to 4.95%.

16. On or about August 14, 2013, the Russian Court entered a decision (the "**Decision**") in favor of the Plaintiffs, including Mr. Petukhov, and against Gornostaev. A true and correct copy of the Decision and accompanying translation is attached as Exhibit "**A**."

17. Around this time, the Russian Prosecutor General's Office initiated a criminal case against Gornostaev for having stolen more than $10 million in cash and shares from Yasenevo's shareholders, whom Gornostaev refused to compensate.

18. Gornostaev—who was dissatisfied with the adverse Decision of the Russian Court, sought the withdrawal of the criminal case against him, and otherwise sought revenge against Mr. Petukhov—then commenced a campaign to disseminate false and defamatory information about Mr. Petukhov in an effort to blackmail and put pressure on Mr. Petukhov, Kisilev and 129 of Yasenevo's other shareholders.

19. In December 2013, as part of his campaign against Mr. Petukhov, Gornostaev filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit of Florida styled <u>Yasenevo United Trading House v. Anatoly Petukhov, *et al.*</u>, Case No. 13-037428 (the "**Florida Lawsuit**"), in which Gornostaev falsely and frivolously alleged, among other things, that Mr. Petukhov had corruptly abused his position in the GUBOP to extract a salary from and ownership interest in Yasenevo.

20. Not only were Gornostaev's allegations against Mr. Petukhov in the Florida Lawsuit demonstrably false (among other reasons, because Mr. Petukhov had retired from the GUBOP in April 2001, before Yasenevo came into existence and four (4) years before Mr. Petukhov's employment with Yasenevo began), Mr. Gornostaev was not a shareholder of Yasenevo at the time of the Florida Lawsuit and had no authority whatsoever to be filing that lawsuit on Yasenevo's behalf.

21. Moreover, despite Gornostaev having litigated against Petukhov in the Russian Court regarding their respective interests in Yasenevo, Gornostaev never made any allegation of corruption

or extortion by Mr. Petukohv in that forum – which was the best-equipped to determine what had or had not occurred in Russia regarding Yasenevo. Instead, it was only after Gornostaev had litigated against Mr. Petukhov in the Russian Court and lost that Gornostaev for the first time made accusations of corruption and extortion against Mr. Petukhov in a new forum (*i.e.*, the Miami-Dade Circuit Court) more than 5,000 miles from the relevant events.

22. The fact that Gornostaev litigated in the Russian Court and lost, and only after that accused Mr. Petukhov of corruption and extortion, except in a new and distant forum, powerfully demonstrates the baselessness of Gornostaev's allegations against Mr. Petukhov in the Florida Lawsuit.

23. And so, Gornostaev quickly settled the Florida Lawsuit in June 2014.

24. In connection with that settlement: (1) Gornostaev withdrew all of the allegations he had made against Mr. Petukhov in the Florida Lawsuit; and (2) the Circuit Court took the rare action of sealing various documents filed in that lawsuit (including the complaint) in order to protect Mr. Petukhov from the reputational harm that would naturally result from Gornostaev's allegations being available to the public.

25. Critically, the Florida Lawsuit received zero press coverage during its pendency and was not reported on in any media outlet until October 2017 – over three (3) years after the case had been settled and sealed – when the Miami Herald published an Article titled "This Russian General fought the mob. Why does he own $28 million of Florida real estate?" (the "**Herald Article**"), which article repeats Gornostaev's allegation that Mr. Petukhov had corruptly abused his position in the GUBOP to obtain his interest in Yasenevo.

26. Although the authors of the Herald Article were careful to note that Gornostaev's claims were merely allegations, and that those allegations had been withdrawn, the authors

nonetheless knew or should have known that Gornostaev's allegations were false and that their re-publication would be misleading to the public.

**C.     The Defamatory Article**

27.     On January 25, 2023, Korangy published an article in the "Real Deal" titled "Russian ex-police general buys Pembroke Pines strip mall for $23M" (the "**Article**," a true and correct copy of which is attached as Exhibit "**B**").

28.     The Article contains a number of statements regarding Mr. Petukhov that are false and/or misleading, and which have caused profound harm to Mr. Petukhov's good name and reputation as well as substantial financial losses.

29.     First, Korangy states in the Article that "Anatoly Petukhov, who allegedly ran an elite anti-organized crime unit disbanded for corruption, paid $689 psf for the retail center."

30.     This statement is false insofar as the disbanding of the GUBOP was not, in fact, alleged at any point in the Florida Lawsuit.

31.     This statement is also misleading insofar as the Article omits the critical fact that the GUBOP was not disbanded until 2008, seven (7) years after Mr. Petukhov had retired from the unit. By omitting this fact, Korangy falsely implies that Mr. Petukhov was running the GUBOP at the time the unit was disbanded and was therefore responsible for or involved with some sort of corruption in that unit.

32.     Second, Korangy states in the Article that "A Russian ex-police general [Mr. Petukhov] – allegedly tied to a public corruption scandal in his motherland – dropped $23 million for a Pembroke Pines strip mall."

6

33. This statement by Korangy – that Mr. Petukhov is allegedly tied to a public corruption scandal in Russia – is false insofar as there was not, in fact, any "public corruption scandal" in Russia to which Mr. Petukhov was tied.

34. This statement is also false insofar as it states, in the present tense, the existence of an allegation that Mr. Petukhov is tied to a public corruption scandal in Russia; when, in fact, Gornostaev had withdrawn all of his allegations in the Florida Lawsuit over eight (8) years prior to the Article's publication. That is, at the time that Korangy published the Article and at all times since, there has not been <u>a single person</u> who maintains the truth of this statement (*i.e.*, that Mr. Petukhov is tied to a public corruption scandal in Russia).

35. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev withdrew all of his allegations in the Florida lawsuit. By omitting this fact, Korangy falsely implies that, at the time of the Article's publication, there was <u>some</u> factual basis for this statement (*i.e.*, that Mr. Petukhov is or was tied to a corruption scandal). In fact, as set forth in Mr. Petukhov's April 9th demand letter, all information available to Korangy contradicts this statement.

36. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev's allegations of corruption and extortion by Mr. Petukhov involving Yasenevo were made for the first time in the Florida Lawsuit only after Gornostaev had <u>unsuccessfully</u> litigated against Mr. Petukhov in the Russian Court regarding their respective interests in Yasenevo. By omitting this fact, Korangy: (1) deprives the Article's readers of critical context that powerfully evidences the baselessness of Gornostaev's allegations; and (2) falsely implies that Gornostaev's allegations against Mr. Petukhov might have some degree of merit.

37. <u>Third</u>, Korangy states in the Article that "The funds [for Mr. Petukhov's real estate portfolio] were allegedly obtained from shaking down local businessmen for police protection in Russia, according to court filings in Miami-Dade Circuit."

38. This statement by Korangy – that Mr. Petukhov obtained the funds for his real estate portfolio from "shaking down local businessmen for police protection in Russia" – is false.

39. This statement is also false insofar as it states, in the present tense, the existence of an allegation that Mr. Petukhov obtained funds from "shaking down local businessmen for police protection in Russia"; when, in fact, Gornostaev had withdrawn all of his allegations in the Florida Lawsuit over eight (8) years prior to the Article's publication. That is, at the time that Korangy published the Article and at all times since, there has not been <u>a single person</u> who maintains the truth of this statement (*i.e.*, that Mr. Petukhov obtained funds from "shaking down" businessmen for police protection in Russia).

40. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev withdrew all of his allegations in the Florida lawsuit. By omitting this fact, Korangy falsely implies that, at the time of the Article's publication, there was <u>some</u> factual basis for this statement (*i.e.*, that Mr. Petukhov had obtained funds through "shaking down local businessmen"). In fact, as set forth in Mr. Petukohv's April 9th demand letter, all information available to Korangy -- most critically, the fact that Mr. Petukhov retired from the police force in Russia in 2001, before Yasenevo came into existence – contradicts the statement.

41. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev's allegations of corruption and extortion by Mr. Petukhov involving Yasenevo were made for the first time in the Florida Lawsuit only after Gornostaev had <u>unsuccessfully</u> litigated against Mr. Petukhov in the Russian Court regarding their respective interests in Yasenevo. By omitting this fact,

8

Korangy: (1) deprives the Article's readers of critical context that powerfully evidences the baselessness of Gornostaev's allegations; and (2) falsely implies that Gornostaev's allegations against Mr. Petukhov might have some degree of merit.

42. <u>Fourth</u>, Korangy states in the Article that "[Petukhov] was the chief deputy of an elite law enforcement unit that investigated organized crime, but the task force was so corrupt it was eventually shut down following a scandal …."

43. This statement is misleading insofar as the Article omits the critical fact that that the GUBOP was not disbanded until 2008, seven (7) years after Mr. Petukhov had retired from the unit.

44. This statement is also misleading insofar as the Article omits the critical fact that Mr. Petukhov was not in any way involved in the "scandal" that purportedly led to the disbanding of the GUBOP.

45. By omitting these facts, Korangy falsely implies that Mr. Petukhov was running the GUBOP at the time the unit was disbanded, or was otherwise involved in the purported "scandal," and was therefore responsible for or involved with some sort of corruption in that unit.

46. <u>Fifth</u>, Korangy states in the Article that "The Miami Herald obtained a copy of a sealed 2013 civil lawsuit against Petukhov entities and his wife, Yulia Petukhova, alleging the ex-general extorted tens of millions of dollars from the owners of a department store chain in Moscow when he was a high-ranking police official."

47. This statement by Korangy – that Mr. Petukhov extorted money from Yasenevo while he was a high-ranking police official – is false. In fact, Mr. Petukhov retired from the police before Yasenevo came into existence.

48. This statement is also false insofar as it states, in the present tense, the existence of an allegation that Mr. Petukhov engaged in extortion; when, in fact, Gornostaev had withdrawn all of his

9

allegations in the Florida Lawsuit over eight (8) years prior to the Article's publication. That is, at the time that Korangy published the Article and at all times since, there has not been <u>a single person</u> who maintains the truth of this statement (*i.e.*, that Mr. Petukhov engaged in extortion).

49.     This statement is also misleading insofar as the Article omits the critical fact that Gornostaev withdrew all of his allegations in the Florida lawsuit.

50.     This statement is also misleading insofar as the Article omits the critical fact Mr. Petukhov had retired from the police in 2001, before the creation of the very department store chain (Yasenevo) that Mr. Petukhov had allegedly extorted "while he was a high-ranking police official."

51.     This statement is also misleading insofar as the Article omits the critical fact that Gornostaev's allegations of corruption and extortion by Mr. Petukhov involving Yasenevo were made for the first time in the Florida Lawsuit only after Gornostaev had <u>unsuccessfully</u> litigated against Mr. Petukhov in the Russian Court regarding their respective interests in Yasenevo.

52.     By omitting these facts, Korangy: (1) deprives the Article's readers of critical context that powerfully evidences the baselessness of Gornostaev's allegations; and (2) falsely implies that Gornostaev's allegations against Mr. Petukhov might have some degree of merit.

53.     In fact, as set forth in Mr. Petukohv's April 9th demand letter, all information available to Korangy contradicts this statement.

54.     <u>Sixth</u>, Korangy states in the Article that "Petukhov used portions of his allegedly illicit gains to pay a combined $37.5 million for eight South Florida properties…."

55.     This statement by Korangy – that Mr. Petukhov used illicit gains to acquire his real estate portfolio – is false.

56.     This statement is also false insofar as it refers to "allegedly illicit gains"; when, in fact, Gornostaev had withdrawn all of his allegations in the Florida Lawsuit over eight (8) years prior to

10

the Article's publication. That is, at the time that Korangy published the Article and at all times since, there has not been <u>a single person</u> who maintains the truth of this statement (*i.e.*, that Mr. Petukhov used illicit gains to acquire his real estate portfolio).

57. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev withdrew all of his allegations in the Florida lawsuit.

58. This statement is also misleading insofar as the Article omits the critical fact that Gornostaev's allegations of corruption and extortion by Mr. Petukhov involving Yasenevo were made for the first time in the Florida Lawsuit only after Gornostaev had <u>unsuccessfully</u> litigated against Mr. Petukhov in the Russian Court regarding their respective interests in Yasenevo.

59. By omitting these facts, Korangy falsely implies that, at the time of the Article's publication, there was <u>some</u> factual basis for the statement that Mr. Petukhov had received "illicit gains." In fact, as set forth in Mr. Petukohv's April 9th demand letter, all information available to Korangy contradicts this statement.

60. On April 9, 2024, undersigned counsel for Mr. Petukhov sent a letter (the "**April 9th Demand Letter**") to Korangy, pursuant to Florida Statutes Chapter 770, advising Korangy of the falsity of the statements contained in the Article and demanding that Korangy retract same. A true and correct copy of the April 9th Demand Letter is attached as Exhibit "**C**."

61. Among the information and materials included with the April 9th Demand Letter was a notarized statement from Kisilev (who was at the time Yasenevo's Deputy Director General, 25% shareholder, and member of Yasenevo's Board of Directors), attesting to the falsity of Gornostaev's allegations in the Florida Lawsuit, and stating that Mr. Petukhov "always acted reasonably and in good faith in order to achieve the best performance of the company [Yasenevo] and make profit for

11

its shareholders and, by all means, contributed greatly to the company, *which, to a great extent, has been successfully functioning for many years thanks to his activity*." (Emphasis added.)

62. Despite this demand, as of the filing of this complaint, Korangy has failed to retract or otherwise correct the Article.

63. Petukhov has retained the services of the undersigned law firm in this action and has agreed to pay the firm a reasonable fee for its services.

64. All conditions precedent to this lawsuit have been performed, satisfied, or waived.

## COUNT I – DEFAMATION

65. Mr. Petukhov restates his allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66. Through its publication of the Article in the "Real Deal," Korangy published multiple false statements about Mr. Petukhov to third parties.

67. Korangy failed to perform any investigation to determine the truth of the foregoing statements prior to publishing the Article.

68. Then, despite receiving Mr. Petukhov's April 9th demand letter, Korangy refused to retract or correct the Article, in willful and deliberate disregard of the truth that could easily have been ascertained after Korangy received said letter. Rather, Korangy maliciously maintained the Article on the internet in spite of the facts being brought to Korangy's attention.

69. Mr. Petukhov has suffered injury as a direct and proximate result of the publication. Specifically, Mr. Petukhov has been injured in his good name and reputation, brought into public scandal and disgrace, has suffered mental anguish, and has been injured in his business by having lost valuable business opportunities.

**WHEREFORE**, Plaintiff, ANATOLY PETUKHOV, respectfully requests that the Court enter a judgment in his favor and against Defendant, KORANGY PUBLISHING INC., a New York corporation, for damages, the costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT II – DEFAMATION BY IMPLICATION

70. Mr. Petukhov restates his allegations contained in paragraphs 1 through 64 as if fully set forth herein.

71. Through its publication of the Article in the "Real Deal," Korangy juxtaposed a series of facts so as to imply a defamatory connection between them that creates a defamatory implication by omitting facts.

72. Despite receiving Mr. Petukhov's April 9th demand letter, Korangy has refused to retract or correct the Article, in willful and deliberate disregard of the critical factual omissions that render each of the foregoing statements misleading and defamatory.

73. Rather, Korangy maliciously maintained the Article on the internet in spite of the facts and critical omissions being brought to Korangy's attention.

74. Mr. Petukhov has suffered damages as a direct and proximate result of Korangy's publication of the foregoing statements in the Article. Specifically, Mr. Petukhov has been injured in his good name and reputation, brought into public scandal and disgrace, has suffered mental anguish, and has been injured in his business by having lost valuable business opportunities.

**WHEREFORE**, Plaintiff, ANATOLY PETUKHOV, respectfully requests that the Court enter a judgment in his favor and against Defendant, KORANGY PUBLISHING INC., a New York corporation, for damages, the costs of this action, and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Petukhov demands a trial by jury of all issues so triable.

Dated: May 29, 2024

                                       Respectfully submitted,

                                       THE BEHAR LAW FIRM, P.A.
                                       *Attorneys for Plaintiff*
                                       1801 N.E. 123rd Street, Suite 314
                                       North Miami, Florida 33181
                                       Tel: (786) 735-3300
                                       Fax: (786) 735-3307
                                       hrb@beharlegal.com
                                       sms@beharlegal.com
                                       np@beharlegal.com

                                       By: *s/ Samuel M. Sheldon*
                                       **Howard R. Behar**
                                       Florida Bar No. 54471
                                       **Samuel M. Sheldon**
                                       Florida Bar No. 54088